IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SULAIMAN ALMUBARAK,

                         Plaintiff,                    Civil Action No. _____

    v.

IBRAHIM SHAHIN and
LIV LUXURY GROUP, LLC,

                         Defendants.

## COMPLAINT

Plaintiff Sulaiman Almubarak alleges on personal information as to his own acts and on information and belief as to all other matters, as follows:

### INTRODUCTION

This action arises from the fraudulent misrepresentations made by defendant Ibrahim Shahin, who formed a criminal enterprise with defendant Liv Luxury Group, LLC ("Liv Luxury") to induce Almubarak to invest $500,000 for a 50% ownership interest in Liv Luxury. Shahin concealed from Almubarak that he previously sold that same ownership interest to a third party, Amr Shoukry. After Almubarak deposited $250,000 in Liv Luxury's checking account, he learned about Shahin's prior sale to Shoukry, and he demanded from Shahin repayment of the $250,000. Shahin refused to repay the $250,000 and has absconded with it, leaving Almubarak with nothing. By perpetrating this fraud, defendants violated the U.S. Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and Shahin also committed fraud and breached his contract with Almubarak. Accordingly, Almubarak is entitled to treble damages of $750,000 with pre-judgment interest at 6%, plus attorneys' fees and costs.

1

**PARTIES**

1. Plaintiff Sulaiman Almubarak is a citizen and resident of Saudi Arabia, and he is neither lawfully admitted for permanent residence in the United States nor domiciled in Virginia.

2. Defendant Ibrahim Shahin is a citizen of the United States and a resident of Virginia.

3. Defendant Liv Luxury is incorporated and has its principal place of business in Virginia. Shahin has described himself as the owner and Chief Executive Office of Liv Luxury.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because a substantial part of this action arises under the laws of the United States.

5. The Court also has jurisdiction under 28 U.S.C. § 1332(b)(2) because the litigation is between a citizen of a foreign country and citizens of Virginia and the amount in controversy exceeds $75,000.

6. Venue is proper in this Court because defendants reside in the Eastern District of Virginia and a substantial part of the events giving rise to this claim occurred in this district. *See* 28 U.S.C. § 1391(b)(1), (2).

**FACTUAL ALLEGATIONS**

7. Shahin formed Liv Luxury for the purpose of sub-letting luxury apartments to tourists visiting in the Washington, D.C. metropolitan area. Shahin and Liv Luxury operate a website on the Internet for the purposes of marketing rental apartments and soliciting reservations throughout the United States and worldwide.

8. On December 29, 2017, Shahin and Amr Shoukry executed an "Agreement to Purchase Limited Liability Company Interest" (the "First Purchase Agreement").

9. In this First Purchase Agreement, Shahin represented that he was the owner of Liv Luxury, and that he was selling a 51 percent interest in Liv Luxury to Shoukry for $300,000. The terms of the transaction were that, within ten days of the execution of the First Purchase Agreement, Shoukry was required to make a one-time payment of $180,000 by wire transfer, cashier's check, or cash to Shahin and to deposit $120,000 to the Liv Luxury bank account.

10. On January 2, 2018, Shahin and Shoukry executed an "Operating Agreement of Liv Luxury Group, LLC" (the "First Operating Agreement"). The First Operating Agreement recited that, with the execution of the First Purchase Agreement, Shoukry owned 51% of Liv Luxury and Shahin owned 49% of Liv Luxury.

11. In fulfillment of the First Purchase Agreement, Shoukry paid Shahin $180,000 by check #102 from his checking account at TD Bank on January 9, 2018, and Shoukry paid Liv Luxury Group $120,000 by official TD Bank check #44151540-6 on January 25, 2018.

12. Under the terms of the First Operating Agreement, Shahin and Shoukry were the two member-managers of Liv Luxury, and all major decisions regarding Liv Luxury's operations were required to be made unanimously by the two member-managers.

13. In June 2018, Almubarak came to the United States and met Shahin in Virginia.

14. Without informing Shoukry, and notwithstanding the provisions of the First Operating Agreement requiring all major decisions regarding Liv Luxury's operations to be made unanimously by Shahin and Shoukry, Shahin represented to Almubarak that he owned Liv Luxury, which he described as a company that sub-lets luxury apartments to tourists. Shahin concealed from Almubarak that Shahin had sold a 51% interest in Liv Luxury to Shoukry.

15. Shahin represented to Almubarak that, if Almubarak invested $500,000 in Liv Luxury, he would acquire a 50% interest in Liv Luxury and would earn substantial profits.

16. However, from the start, Shahin intended only to use Liv Luxury to defraud Almubarak of his investment, and Shahin never intended actually to make Almubarak an owner of any interest in Liv Luxury.

17. Shahin drafted a "Sale Contract" and an "Operating Agreement of Liv Luxury Group, LLC" (the "Second Operating Agreement"), both dated August 5, 2018, to memorialize the parties' agreement and transaction. Shahin sent the Sale Contract and Second Operating Agreement to Almubarak via two e-mails on August 6, 2018.

18. The Sale Contract provided that Shahin was selling 50 percent of Liv Luxury to Almubarak for $500,000, the payments to be made in yearly installments in amounts not yet determined. The Second Operating Agreement stated that, following the sale, Almubarak and Shahin would each own 50 percent of Liv Luxury, and that Liv Luxury would be operated by its two member-managers.

19. Although the parties did not sign the Sale Contract or the Second Operating Agreement, they agreed to accept their terms. Therefore, the Sale Contract and the Second Operating Agreement are valid and binding contracts between Shahin and Almubarak.

20. On August 8, 2018, Shahin accompanied Almubarak to the Citibank office at 8516 Leesburg Pike, Vienna, Virginia. Shahin and Almubarak met with Usama Hassan, Assistant Vice President at this Citibank office, and Shahin introduced Almubarak as his partner at Liv Luxury. On the basis of Shahin's introduction, Usama Hassan opened Citigold Account No. ▮▮▮▮7497 in Almubarak's name. On the basis of Shahin's fraudulent misrepresentations, Almubarak deposited $800 on August 8, 2018, into Citigold Account No. ▮▮▮▮7497.

21. On August 13, 2018, Shahin again accompanied Almubarak to the Citibank office in Vienna, Virginia. Shahin and Almubarak met with Milan Cavic, a Citibank Personal Banker,

and Shahin again introduced Almubarak as his partner at Liv Luxury. On the basis of Shahin's introduction, Milan Cavic issued Almubarak CitiBusiness Card No. ▓▓▓▓ 6749, printed with the name "Sulaiman A Almubarak Liv Luxury Group LLC." This enabled Almubarak to access Liv Luxury's CitiBusiness Flexible Checking Account No. ▓▓▓9488. In addition, on August 13, 2018, Citibank sent Almubarak a User ID, temporary Business Code, and Token Serial Number in the name of "Sulaiman Almubarak Liv Luxury Group," to facilitate Almubarak's access to the Liv Luxury checking account.

22. On August 13, 2018, on the basis of Shahin's fraudulent misrepresentations, Almubarak deposited $780 into his Citigold Account No. ▓▓▓7497. On that same day, and on the basis of Shahin's fraudulent misrepresentations, Almubarak made wire transfers of $2,180 and $76,965 from his account in Saudi Arabia into his Citigold Account No. ▓▓▓7497.

23. On August 13, 2018, on the basis of Shahin's fraudulent misrepresentations, Almubarak made a cash withdrawal of $80,000 from his Citigold Account No. ▓▓▓7497, and the $80,000 was deposited that same day in Liv Luxury's CitiBusiness Flexible Checking Account No. ▓▓▓9488. This $80,000 deposit into Liv Luxury's CitiBusiness Flexible Checking Account No. ▓▓▓9488 represented the first installment payment by Almubarak under the Sale Contract.

24. On September 7, 2018, on the basis of Shahin's fraudulent misrepresentations, Almubarak made wire transfers of $69,965 and $99,965 from his account in Saudi Arabia into his Citigold Account No. ▓▓▓7497, and he transferred $170,000 into Liv Luxury's CitiBusiness Flexible Checking Account No. ▓▓▓9488. This $170,000 transfer into Liv Luxury's CitiBusiness Flexible Checking Account No. ▓▓▓9488 represented the second installment payment by Almubarak under the Sale Contract.

25. After Almubarak returned to Saudi Arabia and throughout the Fall of 2018, Shahin called Almubarak by telephone on multiple occasions, falsely reaffirming that Almubark was a 50% owner of Liv Luxury and informing Almubarak that Shahin had traveled to Florida to for the purpose of signing a contract with a car rental company that would supply cars to tourists who rented from Liv Luxury in Virginia.

26. Later in the Fall of 2018, after Almubarak had deposited or transferred a total of $250,000 into Liv Luxury's CitiBusiness Flexible Checking Account No. ▓▓▓▓9488 in compliance with the Sale Contract and in reliance on Shahin's fraudulent misrepresentations. Almubarak learned for the first time about Shahin's sale of a 51% interest in Liv Luxury to Shoukry. Almubarak confronted Shahin about his fraudulent actions and misrepresentations. Almubarak told Shahin that he would not make any further deposits in Liv Luxury's account and he demanded repayment in full of the $250,000 he already deposited or transferred.

27. Shahin refused to repay any of the $250,000 to Almubarak. To date, Shahin has refused to account for the use or whereabouts of the $250,000 Almubarak deposited or transferred into Liv Luxury's account, and Shahin has absconded with that money.

28. Meanwhile, Shoukry learned about Shahin's dealings with Almubarak and demanded the return of the $300,000 he had paid Shahin and Liv Luxury for a 51% interest in Liv Luxury. Shahin signed an agreement with Shoukry on December 11, 2018, to re-purchase Shoukry's interest for $325,000, with a first immediate payment of $75,000 and the balance of $250,000 to be paid under the terms of a promissory note. The promissory note, entitled "Secured Promissory Note with Confession of Judgment" and dated December 11, 2018, requires Shahin to pay Shoukry $5,000 per month beginning January 1, 2019, and to make two final payments to Shoukry of $95,000 each on January 1, 2020, and February 1, 2020.

## FIRST CLAIM
### Federal Civil RICO, 18 U.S.C. § 1962(c)

29. Almubarak incorporates by reference and restates all the preceding paragraphs of this Complaint.

30. Shahin and Liv Luxury violated RICO, 18 U.S.C. § 1962(c), causing injury to Almubarak.

31. Shahin and Liv Luxury formed and operated a RICO enterprise as defined by 18 U.S.C. § 1961(4) and engaged in a pattern of racketeering activity. The members of the enterprise functioned as a continuing unit and also had a structure distinct from conducting the pattern of racketeering activity—namely, renting luxury apartments. There may also be other members of the enterprise who are not yet known.

32. The enterprise engaged in, and its activities affected, interstate and foreign commerce through its use of the instrumentalities of interstate and foreign commerce, including e-mail, the Internet, telephone, and wire transfers. The enterprise affected interstate commerce when advertising and renting properties and otherwise conducing business, and when fraudulently inducing Almubarak to make wire transfers of funds from Saudi Arabia to the United States and to make electronic transfers of those funds to Shahin and Liv Luxury under the false pretense that Almubarak would be granted a 50 percent interest in Liv Luxury.

34. The acts of racketeering by Shahin and Liv Luxury began in December 2017, when Shahin transacted with Shoukry, and have continued through today, and it is likely that these acts of racketeering by Shahin and Liv Luxury will continue in the future.

35.` Shahin and Liv Luxury engaged in racketeering activity by committing wire fraud in violation of 18 U.S.C. § 1343. Shahin and Liv Luxury devised or intended to devise a

scheme to defraud Almubarak; obtained his money by means of false and fraudulent pretenses, representations, or promises; and transmitted or caused to be transmitted by foreign wire transfers and domestic electronic transfers, writings, signs, or signals for the purpose of executing or attempting to execute that scheme.

36. Specifically, on or about August 6, 2018, Shahin used e-mail to transmit to Almubarak the Sale Contract, which fraudulently claimed that Shahin would sell 50 percent of Liv Luxury to Almubarak in consideration of $500,000.

37. Also on or about August 6, 2018, Shahin used e-mail to transmit to Almubarak the Second Operating Agreement, which fraudulently represented that, following the sale, Almubarak and Shahin would each own 50 percent of Liv Luxury.

38. Shahin drafted these documents and made these misrepresentations, which he then transmitted electronically through interstate commerce, despite his knowledge that Shahin did not have a 50 percent interest to sell because he had already sold a 51 percent interest to Shoukry, and with intent to defraud Almubarak.

39. Shahin, through his fraudulent misrepresentations, also caused Almubarak to make wire transfers of funds from Saudi Arabia to the United States and electronic transfers of those funds during August and September 2018, when Almubarak transferred funds from his Citibank account to Liv Luxury's checking account at Citibank.

40. Shahin perpetuated the fraudulent scheme by placing multiple telephone calls from Virginia to Almubarak in Saudi Arabia in the Fall of 2018 to tell Almubarak about Shahin's travel to Florida for the purpose of signing a contract with a rental car company that would supply cars to tourists who rented from Liv Luxury in Viriginia.  Shahin's representations were

intended to continue to deceive Almubarak into believing that he was a 50% owner of Liv Luxury.

41. Shahin and Liv Luxury also engaged in racketeering activity by receiving and possessing money in excess of $5,000 that was knowingly taken by fraud and crossed interstate lines, in violation of 18 U.S.C. § 2315.  Shahin and Liv Luxury received and possessed $250,000 that Almubarak transferred in interstate commerce in reasonable reliance on Shahin's fraudulent misrepresentations that the funds would be used to purchase an interest in Liv Luxury.

42. Almubarak reasonably relied to his detriment on Shahin's fraudulent communications, and defendants' RICO violations caused injury to Almubarak.

43. Almubarak is entitled to an award of three times the damages he sustained, for a total of $750,000 with pre-judgment interest at 6%, as well as the recovery of attorney's fees and costs and any other authorized relief.

## SECOND CLAIM
**Breach of Contract**

44. Almubarak incorporates by reference and restates all the preceding paragraphs of this Complaint.

45. The Sale Contract is valid contract that existed between Almubarak and Shahin, the terms of which provided that Almubarak would pay $500,000 in exchange for a 50 percent interest in Liv Luxury.

46. Almubarak performed under the contract by transferring $250,000 to Liv Luxury's account, but Shahin breached the contract by absconding with this $250,000 without

granting Almubarak any interest in Liv Luxury and without using the $250,000 for any purpose related to the operation of Liv Luxury.

47.     Almubarak has suffered financial harm by Shahin's breach of contract and should be awarded damages, including compensatory damages in the amount of $250,000.

### THIRD CLAIM
**Fraud**

48.     Almubarak incorporates by reference and restates all the preceding paragraphs of this Complaint.

49.     In seeking to obtain funds from Almubarak, Shahin fraudulently misrepresented material facts about the parties' purchase agreement and the ownership of Liv Luxury, namely, that Shahin owned 100 percent of Liv Luxury and would transfer a 50 percent share to Almubarak upon his payment of $500,000.

50.     At that time, Shahin knew that these representations were false but deliberately misled Almubarak and concealed from Almubarak that Shahin did not have a 50 percent interest to sell to Almubarak.

51.     At that time, Almubarak did not and could not know about Shahin's misrepresentations.

52.     Shahin and Liv Luxury intended that Almubarak would rely on Shahin's misrepresentations and would transfer funds to them, thinking those funds would purchase a 50 percent interest in Liv Luxury.

53.     Almubarak did in fact rely on Shahin's misrepresentations when he transferred $250,000 to Shahin and Liv Luxury under the presumption that he was purchasing a 50 percent interest in Liv Luxury.

54. Almubarak has suffered financial harm by Shahin's and Liv Luxury's fraudulent misrepresentations and should be awarded damages.

## PRAYER FOR RELIEF

Wherefore, Almubarak respectfully requests the following relief:

(a) Treble damages pursuant to 18 U.S.C. § 1964(c) of $750,000, with pre-judgment and post-judgment interest at 6%, plus attorneys' fees and costs;

(b) In the alternative, an award of compensatory damages to Almubarak in the amount of $250,000, and consequential and exemplary damages in an amount to be determined at trial, with pre-judgment and post-judgment interest at 6%; and

(c) Such other and further relief as the Court deems just and appropriate, including but not limited to an award of Almubarak's attorney's fees and costs.

## JURY TRIAL DEMAND

Almubarak demands trial by jury on all issues so triable.

Dated: March 28, 2019

Respectfully submitted,

*/s/ Timothy Bergin*
Timothy Bergin (Va. Bar No. 89905)
Neil H. Koslowe (*pro hac vice pending*)
Lauren Beck Kerwin
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Telephone: (703) 447-4032
Facsimile: (202) 318-7707
Email: tbergin@potomaclaw.com

*Counsel for Plaintiff*