UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SULAIMAN ALMUBARAK, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:19cv358 (WEF) |
| IBRAHIM SHAHIN et al., | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees and Prejudgment Interest (the "Motion") and supporting memorandum. (Dkts. 162, 163). The Motion was fully briefed, and the Court heard argument of counsel on January 17, 2023, taking the matter under advisement.

**I.    Relevant Factual Background and Procedural History**

Plaintiff Sulaiman Almubarak and Defendant Ibrahim Shahin were business associates. The underlying disputes between the parties arose from two separate commercial agreements.

***The Liv Luxury Group, LLC Dispute*[1]**

On December 17, 2015, Shahin formed Liv Luxury Group, LLC ("Liv Luxury"), a business that supplied high-end accommodations for international travelers. Shahin was the sole owner of Liv Luxury until late 2017. On December 27, 2017, Shahin agreed to sell an individual named Amr Shoukry a 51% ownership interest in Liv Luxury.

---

[1] The operative facts set forth herein regarding the Liv Luxury Group dispute were the undisputed facts relied upon by the Court in granting partial summary judgement for the Plaintiff. (Summ. J. Order at 3-4) (Dkt. 92).

1

On January 2, 2018, Shahin and Shoukry signed an operating agreement governing Liv Luxury. The agreement noted that Shoukry owned a 51% interest, and Shahin owned a 49% interest. The operating agreement also provided that unanimous consent of all members was required before a member could sell their share to a non-member, and if the company had only two members, then major decisions had to be unanimous.

In July of 2018, Shoukry notified Shahin that he was going to leave the company. Then, between September and December, they negotiated the terms of Shahin re-purchasing Shoukry's ownership interest. Shoukry retained his 51% of Liv Luxury until December 11, 2018.

In August of 2018 – after Shoukry notified Shahin that he intended to sell his actual ownership position, but before that sale occurred – Shahin met with Plaintiff Almubarak and represented himself to be the owner of 100% of Liv Luxury. Shahin and Almubarak reached an agreement whereby Shahin agreed to sell a 50% ownership interest in Liv Luxury to Almubarak in exchange for $500,000. The pair shared, but did not sign, an operating agreement.

On and leading up to September 7, 2018, Almubarak paid $250,000 towards the purchase price.[2] On September 29, 2018, Shoukry notified Almubarak that he owned 51% of Liv Luxury. Almubarak then confronted Shahin and in November of 2018, Shahin offered to return the $250,000 which Almubarak had paid, but Almubarak declined this offer.

***The Commission Dispute*[3]**

In July of 2018, Shahin sought the assistance of Almubarak to lobby the government of Saudi Arabia to disburse several million dollars purportedly owed to a foreign company associated

---

[2] *See also* Shahin Dep. at 129. (Dkt 60-1 at 35).

[3] Because the commission dispute was not addressed directly in the summary judgment order, the facts set forth here are derived from Plaintiff's Motion. These are not considered undisputed facts. (*See* Dkt. 163 at 3-11) ("Mem. Supp.").

with Shahin. Almubarak recruited a third person to assist in this effort. Shahin and Almubarak entered into an oral contract in which they agreed that if the lobbying effort was successful the three individuals would divide a $1,000,000 commission. The lobbying effort was successful.

A dispute however arose between Shahin and Almubarak as to the division and payment of their respective shares of the commission. Almubarak believed one-third of the commission ($333,333) was to be divided equally between he and Shahin, such that each individual would receive $166,666. Almubarak claims that on September 4, 2018, he transferred $333,333 to Shahin, half of which was for Shahin's share of the commission, and the other half to be paid toward Almubarak's investment in Liv Luxury.[4]

Almubarak initiated this case against Shahin regarding the Liv Luxury dispute and the commission dispute on March 28, 2019, and the matter was assigned to the Honorable Liam O'Grady, United States District Judge.

### *The Second Amended Complaint and the Resolution of Each Claim*

The operative complaint, Almubarak's Second Amended Complaint, was filed on August 16, 2019.[5] (Dkt 32) ("Second Am. Compl."). Almubarak brought four causes of action: a civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) pertaining to the Liv Luxury dispute (Count I); breach of contract regarding the Liv Luxury dispute (Count II); fraud regarding the Liv Luxury dispute (Count III); and breach of contract regarding the commission dispute (Count IV). (Second Am. Compl. ¶¶ 40-79).

---

[4] Thus, Almubarak claims to have paid Shahin a total of $583,333, of which he claims $416,666 was to be paid toward the Liv Luxury investment and $166,666 was in relation to the separate commission transaction.

[5] Almubarak filed his original Complaint on March 28, 2019. (Dkt 1) Almubarak filed an Amended Complaint on May 29, 2019. (Dkt. 20). On August 9, 2019, the Court partially granted Defendants' Motion to Dismiss the Amended Complaint with leave for Almubarak to amend (Dkt. 31), which resulted in the filing of the Second Amended Complaint.

Shahin moved to dismiss for failure to state a claim, and the Court granted that motion in part, dismissing with prejudice Almubarak's first claim of a federal civil RICO Act violation, but permitting the remaining breach of contract and fraud claims to proceed. (Dkt. 40). Defendants then answered the complaint and counterclaimed for breach of contract regarding the commission dispute. (Dkts. 41, 42).

Almubarak then moved for summary judgment on the Liv Luxury claims, namely Count II, the breach of contract claim, and Count III, the related fraud claim.[6] (Dkt. 83). While the Court denied summary judgment on Count II, the breach of contract claim, the Court granted summary judgment on Count III under a constructive fraud theory and awarded damages in the amount of $250,000.[7] (Dkt. 92) ("Summ. J. Order").

Because Plaintiff also moved for summary judgment as to attorneys' fees on the fraud count, and "[n]either party [] contested the procedural propriety of a addressing the issue at th[at] stage," the Court addressed the issue of attorneys' fees on the merits. (Summ. J. Order at 10-12). The Court found that Plaintiff was not entitled to attorneys' fees. *Id.* The Court noted that Virginia applies the "American Rule" but has recognized exceptions, including an exception for fraud under *Prospect Development Co., Inc. v. Bershader*, 258 Va. 75, 92 (1999) (citing exceptions to the American Rule under Virginia law, such as a prevailing party "who prosecuted a cause of action for malicious prosecution or false imprisonment"). The Court found in this case no "evidence of a pattern of [] misrepresentations, or a pattern of engaging in similar fraudulent acts," and no "indicia of callousness," noting that Shahin offered to refund Almubarak's damages related to the

---

[6] Almubarak did not move for summary judgment on the remaining count, the breach of contract claim regarding the commission dispute. *Id.*

[7] $250,000 is the amount of money Almubarak had paid Shahin by September 7, 2018, to purchase an ownership interest in Liv Luxury. Almubarak never paid Shahin the full $500,000 that was initially agreed upon by the parties.

4

Liv Luxury deal. *Id.* at 12. Finally, the Court found that the nature of the relief granted in this case did not justify attorneys' fees, distinguishing it from the "hollow" victory and "hotly contested" case in *Bershader*, again noting that Shahin offered pre-litigation to refund Almubarak's damages. *Id.* The Court therefore found attorneys' fees inappropriate but stated that the decision regarding attorneys' fees was "provisional[] … as the final decision on attorneys' fees is ripe only upon entry of final judgment." *Id*.

The Court having dismissed Count I and granted summary judgment on Count III, the parties were left to litigate Almubarak's Count II (the Liv Luxury breach of contract claim), Almubarak's Count IV (a breach of the oral commission contract), as well as Shahin's counterclaim, also alleging a breach of the oral commission contract. On November 2, 2022, the undersigned held a settlement conference regarding the remaining claims, which all parties attended. The case settled, with agreement by the parties to dismiss all remaining claims and counterclaims with prejudice, with the exception that Plaintiff could move for attorneys' fees and prejudgment interest. On November 8, 2022, the Court ordered, per joint stipulation of the parties, that all remaining claims were dismissed. (Dkt. 157). The parties then consented to magistrate judge jurisdiction for determination of attorneys' fees and prejudgment interest. (Dkts. 158, 159).

On December 15, 2022, Almubarak moved for attorneys' fees and prejudgment interest, which was fully briefed, and the undersigned heard argument of counsel on January 17, 2023, taking the matter under advisement. (Dkts. 162, 169).

## II.     Analysis

Plaintiff Almubarak has moved for both attorneys' fees and prejudgment interest, and the Court will address each in turn.

### A. Attorneys' Fees and Costs

As an initial matter, the undersigned is mindful that the District Judge previously considered an argument by Plaintiff for attorneys' fees on the merits and reached a provisional determination that attorneys' fees are not appropriate. (Summ. J. Order at 10-12). However, the Court made clear that the previous determination was indeed "provisional[] … as the final decision on attorneys' fees is ripe only upon entry of final judgment." Therefore, pursuant to the Court's language, the agreement of the parties at settlement, including their joint consent to magistrate judge jurisdiction to consider this issue, and the latitude permitted with respect to non-final judgments under Federal Rule of Civil Procedure 54(b), the undersigned will look to the previous determination but may revisit and reconsider the issue of attorneys' fees.

There are two issues not in dispute. First, as to the law applicable, the parties have correctly argued this matter under the law of Virginia, the forum state in this diversity case. Second, the parties agree that the only cause of action upon which Plaintiff may base its claim for attorneys' fees is Count III of the Second Amended Complaint, constructive fraud relating to the Liv Luxury transaction, on which the Court granted summary judgment to Plaintiff. (*See* Mem. Supp. at 2).

Virginia applies the "American Rule" for attorneys' fees, "which provides that [g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *St. John v. Thompson*, 299 Va. 431, 434 (2021) (internal quotation marks and citations omitted). There are no contractual or statutory bases for fees here, and neither party argues that point. However, beyond contract or statute, there are further exceptions to the rule under Virginia law. *See Bershader*, 258 Va. 75, 92 (1999). Such departures "are appropriate only in exceptional cases and for dominating reasons of justice." *St. John*, 299 Va. at 435 (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939)). In

6

*Bershader*, the Virginia Supreme Court acknowledged an additional exception, that a party prevailing on a fraud claim may receive attorneys' fees, if warranted by "the circumstances surrounding the fraudulent acts and the nature of the relief granted to the defrauded party." *Id.* Thus, *Bershader* granted the trial court discretion to identify which fraud cases rise to the requisite level for an award of attorneys' fees. The court noted that, in *Bershader*, the plaintiff had "demonstrate[d] that the defendants engaged in callous, deliberate, deceitful acts that the chancellor described as a pattern of misconduct, which misled the [plaintiff] as well as other purchasers of property in the subdivision." *Id.* at 92-93. While Almubarak is correct to note that the Virginia Supreme Court has subsequently held that a fraud need not be "particularly egregious" to obtain attorneys' fees, *St. John*, 299 Va. at 435, the surrounding circumstances remain the touchstone, and the "callous[ness], deliberate[ness], and deceitful[ness]" of the fraud, as well as whether the fraud is part of "a pattern of misconduct," remain factors for the Court to consider. *Bershader*, 258 Va. at 92-93.

Indeed, the Court's previous, provisional determination recognized and relied upon *Bershader*. (Summ. J. Order at 11-12). The Court correctly characterized *Bershader* as creating "a discretionary new exception in certain fraud causes," while cautioning that the case "does not entitle fraud claimants to fees as a matter of course." *Id.* at 11. In applying *Bershader*, the Court held Plaintiff's case does not fall within the exception, citing "[t]he lack of a fraudulent pattern," "no indicia of callousness," and distinguishing the nature of relief here from *Bershader*, noting that Defendant Shahin "offered to refund Almubarak's damages months before Almubarak even brought this lawsuit." *Id.* at 12.

Nevertheless, Almubarak argues that he is entitled to attorneys' fees on the constructive fraud claim and that the Court's provisional ruling was in error. First, Almubarak argues his

7

victory on the fraud claim would be "hollow" without attorneys' fees, as he spent $195,197.06 in order to prevail on his damages claim for $250,000. (Mem. Supp. at 13). On this point, Almubarak's argument has some equitable appeal, but standing alone is not a sufficient basis to deviate from the traditional "American Rule." Second, Almubarak argues Shahin's fraud was indeed "callous, deliberate, [and] deceitful," citing Shahin's false representations to Almubarak about his ownership of Liv Luxury, his failure to disclose the true ownership leading up to the sale, and his ultimate fraudulent agreement to sell a stake of Liv Luxury to Almubarak. *Id.* Third, Almubarak argues that Shahin also committed a fraudulent act against Shokry, demonstrating both callousness and a pattern of fraud. *Id.* at 13-14, n.63. On these points, Shahin responds by pointing to the Court's provisional ruling and arguing that "[n]one of the facts in this case have changed since [that determination]." (Defs.' Opp'n at 3-4).

The undersigned, now revisiting the Court's previous determination, finds that the provisional ruling reached the correct conclusion. First, the Court considers "the circumstances surrounding the fraudulent acts." *St. John*, 299 Va. at 435 (citing *Bershader*, 258 Va. at 92). While there was undoubtedly an element of deceit in Shahin's actions and misrepresentations, the Court is not convinced the facts rise to the requisite level of "callous[ness]" to justify attorneys' fees. Shahin misrepresented his actual ownership stake in Liv Luxury to Almubarak, but there is undisputed evidence that prior to that misrepresentation, Shoukry – at that point in time the Liv Luxury partner – indicated his intent to "leave the company" and had "agreed to sell his interest in Liv Luxury," and Shahin and Shoukry even negotiated on the terms of the buyout. (Summ. J. Order at 3, n.2; *id.* at 4). This fact mitigates the admittedly deceptive representation made by Shahin to Almubarak. Furthermore, when the fraud was discovered, both Shoukry and Almubarak demanded that Shahin return their investments, and Shahin tried to comply. Shahin returned the

8

money to Shoukry, and Shoukry accepted it. Shahin offered to return the money to Almubarak as well. However, Almubarak declined.[8] (Summ. J. Order at 4; Mem. Supp. at 9-10). Moreover, the Court agrees with the provisional determination that there is no "pattern" of fraud. There is just one fraud at issue, regarding Shahin's attempt to double deal with the ownership of Liv Luxury. While Shoukry became involved, his status as a "victim" – let alone a victim of an additional fraud – is far from clear. Regardless, the undersigned finds that this factor, whether a "pattern" existed, bears less weight in this case in comparison to the other mitigating factors noted above.

Second, the undersigned considers "the nature of the relief granted." *St. John*, 299 Va. at 435 (citing *Bershader*, 258 Va. at 92). At summary judgment, the Court granted Plaintiff a full return of his alleged damages, $250,000. Again, the undersigned agrees with the Court's previous, provisional determination on this point. Although Almubarak incurred fees and costs beyond his compensatory damages in pursuit of his claim, it is undisputed that Shahin offered to pay him the $250,000 prior to litigation. (*See* Summ. J. Order at 4). Therefore, this second factor does not weigh in favor of awarding attorneys' fees.

The undersigned finds that on the whole, Almubarak has failed to demonstrate that

---

[8] It is at this point a factual dispute arises. Plaintiff claims that he declined Shahin's offer only because he had paid an additional $166,666, on top of his payment of $250,000, toward the purchase of a stake in Liv Luxury. (Mem. Supp. at 9-10). Therefore, according to Plaintiff, the offer was inadequate, and he had to sue to "recover the full [amount] he had paid for the 50% interest in Liv Luxury." *Id.* at 10. However, as Defendants point out, Plaintiff's complaints, including the operative Second Amended Complaint, explicitly claim that Plaintiff paid only $250,000 for the Liv Luxury transaction and seek only $250,000 in damages with respect to the Liv Luxury transaction. (*See, e.g.*, Second Am. Compl. ¶ 26). Indeed, Plaintiff's complaint alleges that he demanded "repayment in full of the $250,000" he sent to Shahin in connection to Liv Luxury. *Id.* To resolve the dispute on this point, the Court finds Plaintiff must be held to his assertions in his operative complaint. Therefore, Shahin's offer to pay back $250,000 – a fact which neither party disputes with respect to this Motion – is viewed by the Court as an offer to return Plaintiff's full investment in Liv Luxury.

9

attorneys' fees and costs are appropriate in this case and will deny Plaintiff's motion on this issue.[9]

### B. Prejudgment Interest[10]

Virginia law permits the trial court to, at final judgment, "provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va. Code. Ann. § 8.01-382. This award of prejudgment interest, if any, is at the discretion of the court, which "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000) (citation omitted); *see also Hannon Armstrong & Co. v. Sumitomo Trust & Banking Co.*, 973 F.2d 359, 369 (4th Cir. 1992) ("Whether interest should be awarded pursuant to section 8.01–382, and if so, from what date, are matters within the sound discretion of the district court."). "The purpose of awarding pre-judgment interest is to compensate the prevailing party for the loss of use of its funds." *Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 594 (E.D. Va. Aug. 15, 2019) (citation omitted). "[S]ome courts are reluctant to award prejudgment interest when the legal dispute is bona fide." *Wells Fargo Equipment Finance, Inc. v. State Farm Fire and Cas. Co.*, 823 F. Supp. 2d 364, 367 (E.D. Va. Oct. 6, 2011) (citing *Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 199 (4th Cir. 1987)). While such a bona fide dispute "does not preclude [a prejudgment interest] award … the existence of a bona fide legal dispute remains a factor courts may appropriately consider within their equitable determination." *Id.*

Almubarak claims that the equities in this case favor an award of prejudgment interest on the $250,000 in damages awarded to him by this Court. Almubarak argues that since 2018,

---

[9] The Court notes that Defendants put forth argument that *Bershader* is not applicable due to subsequent Virginia caselaw. (Defs.' Opp'n at 4-5). Because the Court finds that attorneys' fees and costs are not appropriate in this case, it need not address Defendants' argument.

[10] The District Judge was not asked to address the question of prejudgment interest at the time he issued his provisional ruling on attorneys' fees.

"Shahin has had free and unlawful use of at least $250,000 of Almubarak's money, while Almubarak has forfeited interest on $80,000 of that money and has continued to pay substantial interest on the balance of $170,000."[11] (Mem. Supp. at 17). Almubarak further argues that the case does not have the sort of "close legal issues which might give the Court pause to award prejudgment interest." *Id.*

Shahin argues against an award of prejudgment interest. First, he argues that the investment in Liv Luxury had "no guarantee," and note that the impacts of the intervening COVID-19 pandemic would have particularly damaged the Liv Luxury business and any investment therein. (Defs.' Opp'n at 9). Second, Shahin notes that he offered to return the $250,000 prior to litigation. *Id.* Third, Shahin argues that the dispute was bona fide and litigated in good faith, because Almubarak sought additional liability, including a civil RICO claim, and "exemplary damages." *Id.* Finally, Shahin argues that Almubarak's "fraud claim was not for a liquidated amount" and therefore cannot accrue prejudgment interest. *Id.* at 9-10.

The undersigned finds that Almubarak is indeed entitled to prejudgment interest on the $250,000 in this case. There is no question that Shahin wrongfully obtained the $250,000, through fraud, and that Almubarak was therefore deprived of the use of that money beginning on September 7, 2018.

Shahin's argument that the money might have been lost during the COVID-19 pandemic is speculative and, moreover, fails to account for the primary purpose of awarding prejudgment interest, to fully compensate a prevailing plaintiff by placing them "in as good a position as he would have been in," had the wrongful conduct of the defendant not occurred. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983).

---

[11] Plaintiff claims to have taken out a loan for the $170,000. (Mem. Supp. at 17).

Furthermore, Shahin's argument that prejudgment interest is barred because the damages are not for a "liquidated amount" is without merit. In support of this argument, Shahin cites *Advanced Marine Enterprises, Inc. v. PRC Inc.*, 256 Va. 106, 126-27 (1998), but the Virginia Supreme Court's finding in that case with respect to prejudgment interest is not applicable here. The court found that liability for "treble damages" and "punitive damages" remained "unliquidated" from the time of the court's bench ruling, because the court expressly reserved those issues for a later time. *Id.* However, the court's ruling did not apply to the compensatory damages that were awarded at the time of the bench trial. Here, the damages at issue are those that the Court expressly awarded as compensatory damages on Count III at summary judgment.

However, as previously established, in November 2018 Shahin offered to return the $250,000 to Almubarak. At that point in time, Almubarak could have regained possession of the $250,000 he paid relating to Liv Luxury but he declined the offer in order to pursue this litigation. The undersigned therefore finds it would not be equitable to award prejudgment interest beyond Almubarak's decision to decline this refund.

The Court's duty is to balance the equities and use its discretion to award prejudgment interest, where appropriate, to make whole a prevailing plaintiff. *See Moore Bros.*, 207 F.3d at 727. Here, the undersigned finds that the equities on balance justify an award of prejudgment interest, but only within a limited time range. Specifically, the prejudgment interest is awarded beginning September 7, 2018, the date by which Almubarak had paid the $250,000, until November 30, 2018, when Shahin had offered to return the $250,000 but Almubarak declined.[12]

---

[12] The record does not clearly establish the date that Shahin made this offer and Almubarak declined it. It is undisputed that it occurred "[i]n November" of 2018. (Summ. J. Order at 4) (citing Dkts. 59, 82). Therefore, to ensure that Plaintiff is adequately compensated, the Court will order prejudgment interest be paid through the final day of November, November 30, of 2018.

(*See* Summ. J. Order at 4) (citing Dkts. 59, 60-1, 82).

### III.     Final Judgment

Because all remaining claims were dismissed pursuant to settlement, this ruling regarding prejudgment interest resolves Plaintiff Almubarak's claims against Defendants in their entirety. Therefore, entry of final judgment under Federal Rule of Civil Procedure 54(b) on Count III is appropriate at this time.

Accordingly, it is hereby

**ORDERED** that final judgment is entered in favor of Plaintiff against Defendants under Count III, for constructive fraud, and damages are awarded in the amount of $250,000 (*see* Dkt. 92); it is further

**ORDERED** that Plaintiff's Motion for Attorneys' Fees is **DENIED** (*see* Dkt. 162); it is further

**ORDERED** that Plaintiff's Motion for Prejudgment Interest is **GRANTED** at the statutory rate of six percent annum dating from September 7, 2018 to November 30, 2018 (*see* Dkt. 162); it is further

**ORDERED** that as all claims are now resolved, the Clerk is directed to close this matter.

**ENTERED** this 31st day of March, 2023.

*William C. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia